# In the United States Court of Federal Claims

No. 25-491
Filed: August 21, 2025

| | |
|---|---|
| JUSTIN PAUL DREILING, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| *Defendant*. | ) |
| | ) |

## ORDER

Justin Paul Dreiling brings this action pro se to challenge certain Army regulations requiring that children participating in youth sports activities at Fort Leonard Wood have received an influenza vaccination. ECF No. 5 ¶¶ 12-13. Plaintiff has sought relief from the Army to allow his child to play soccer without being vaccinated. *Id*. ¶¶ 14-23. Plaintiff raises several challenges to these regulations, *see id*. ¶¶ 34-45, but does not assert that they are money-mandating sources of law.

There are two motions currently before the court. First, Plaintiff has moved for a default judgment. ECF No. 9. Second, the Government has moved to dismiss for lack of subject-matter jurisdiction and for failure to state a claim. ECF No. 7.

## I.    Motion for Default Judgment

Plaintiff filed this action on March 17, 2025, and the Government was served with his complaint on March 19, 2025. ECF No. 1. He then filed an amended complaint on April 1, 2025. ECF No. 5. The Government filed its motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC") on May 19, 2025. ECF No. 7.

Plaintiff moves for default judgment because he argues the Government's motion filed on May 19, 2025, was untimely. ECF No. 9 at 1. Under Rule 12, the Government had 60 days from the date of service of the complaint to answer or otherwise respond to the complaint. RCFC 12(a)(1)(A) (providing 60 days to answer or respond to the complaint). Although Plaintiff filed his complaint on March 17, 2025, the Government was not served with his complaint until March 19, 2025. Accordingly, the Government had 60 days from March 19, 2025, to file its answer or other response to the complaint—until May 18, 2025, which was a

Sunday.  Under Rule 6, when a deadline falls on a Sunday, the deadline is extended "until the end of the next day that is not a" Sunday or a holiday.  RCFC 6(a)(1)(C).  Thus, the Government's deadline to respond to the complaint was Monday, May 19, 2025.

The amended complaint did not change this.  Under Rule 15, "any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later."  RCFC 15(a)(3).  Given Plaintiff filed the Amended Complaint on April 1, 2025, the Government's response remained due on May 19, 2025, because the 19th was later than April 15, 2025 (i.e. 14 days after the amended complaint).  Because the Government timely filed its motion on May 19, 2025, the court denies Plaintiff's motion for default judgment, ECF No. 9.

## II.    Motion to Dismiss

This court's primary grant of jurisdiction is the Tucker Act, which provides this court with jurisdiction to decide "actions pursuant to contracts with the United States, actions to recover illegal exactions of money by the United States, and actions brought pursuant to money-mandating statutes, regulations, executive orders, or constitutional provisions."  *Roth v. United States*, 378 F.3d 1371, 1384 (Fed. Cir. 2004).  But the Tucker Act is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages."  *United States v. Testan*, 424 U.S. 392, 398 (1976).  Accordingly, it is plaintiff's burden to "identify a separate source of substantive law that creates the right to money damages."  *Greenlee Cnty. v. United States*, 487 F.3d 871, 875 (Fed. Cir. 2007) (quoting *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005)).  "Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."  *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868).

Whether this court has jurisdiction to decide the merits of a case is a threshold matter.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).  When deciding a Rule 12(b)(1) motion, the court "must accept as true all undisputed facts asserted in the . . . complaint and draw all reasonable inferences in favor of the [non-movant]."  *Acevedo v. United States*, 824 F.3d 1365, 1368 (Fed. Cir. 2016) (quoting *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011)).  While a pro se plaintiff's complaint is generally held to "less stringent standards[,]" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)), even a pro se plaintiff must meet its jurisdictional burden.  *Kelley v. Sec'y, U.S. Dep't of Lab.*, 812 F.2d 1378, 1380 (Fed. Cir. 1987) ("We agree that leniency with respect to mere formalities should be extended to a *pro se* party, . . . [h]owever, . . . a court may not similarly take a liberal view of that jurisdictional requirement and set a different rule for *pro se* litigants only.").  "Pro se or not, the plaintiff still has the burden of establishing by a preponderance of the evidence that this Court has jurisdiction over its claims."  *Rothing v. United States*, 132 Fed. Cl. 387, 390 (2017) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)) (emphasis removed).  To be sure, "[a] motion to dismiss under RCFC 12(b)(1) will be granted if the plaintiff fails to assert appropriate subject-matter jurisdiction, as 'subject matter jurisdiction is strictly construed.'"  *Telemaque v. United States*, 82 Fed. Cl. 624, 626 (2008) (quoting *Leonardo v. United States*, 55 Fed. Cl. 344, 346 (2003)), *appeal dismissed*, 329

F. App'x 271 (Fed. Cir. 2009).  Finally, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  RCFC 12(h)(3).

**A.     This court's jurisdiction generally is limited to money-mandating claims.**

The Government moves to dismiss because it argues that Plaintiff has not identified any money-mandating source of law on which to base this court's jurisdiction.  ECF No. 7 at 6-9. Plaintiff does not disagree:

> The defendant is correct that "SSG Dreiling does not claim that IMCOM Regulation 608-10-1, the regulatory provision upon which he relies, is money-mandating."  ECF No. 7 at 11.  There is no dispute on this issue.  The claims are not money-mandating and the plaintiff has not, and will not, make any argument to the contrary.  If the jurisdiction is truly limited to monetary claims, then his complaint must certainly be dismissed.

ECF No. 8 at 9-10 (internal footnotes omitted).  Plaintiff, however, disagrees that this court's jurisdiction is limited to monetary claims.

Plaintiff argues that nothing in the text of the Tucker Act limits this court's jurisdiction to monetary claims against the Government and that this court has equitable jurisdiction to hear his case.  ECF No. 8 at 10-15.  But as the court explained above, the Supreme Court and the Federal Circuit have squarely held that this court's jurisdiction is generally limited to monetary claims against the Government.[1]  While the Tucker Act grants this court authority to grant certain non-monetary relief, all such relief must be "as an incident of and collateral to any such judgment." 28 U.S.C. § 1491(a)(2).  Without a monetary claim, this court cannot grant this ancillary relief. As the Federal Circuit explained, the court "has no power 'to grant affirmative non-monetary relief unless it is tied and subordinate to a money judgment.'"  *James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998) (quoting *Austin v. United States*, 206 Ct. Cl. 719, 723 (1975)).

This court must follow the Supreme Court's and Federal Circuit's decisions.  *Coltec Indus., Inc. v. United States*, 454 F.3d 1340, 1353 (Fed. Cir. 2006) ("There can be no question that the Court of Federal Claims is required to follow the precedent of the Supreme Court, our court, and our predecessor court, the Court of Claims.").  Plaintiff's arguments to the contrary are based on a misunderstanding of cases upon which he relies.  Plaintiff quotes one of Justice Thomas's concurring opinions in which he stated: "In my view, if the Court encounters a decision that is demonstrably erroneous—*i.e.*, one that is not a permissible interpretation of the text—the Court should correct the error, regardless of whether other factors support overruling the precedent."  *Gamble v. United States*, 587 U.S. 678, 717-18 (2019) (Thomas, J., concurring). Plaintiff also relies on *Citizens United v. Federal Election Commission*'s statement that "[o]ur precedent is to be respected unless the most convincing of reasons demonstrates that adherence

---

[1] The major exception to the money-mandating requirement is this court's bid-protest jurisdiction in 28 U.S.C. § 1491(b).  But that provision does not provide any basis for jurisdiction in this case.

to it puts us on a course that is sure error."  558 U.S. 310, 362 (2010).  But these cases are clearly talking about what the Supreme Court does when *it* reviews its prior decisions.

A different rule applies to inferior courts such as this one.  Even if this court thought that *Mitchell*, *Testan*, or the any of the other Supreme Court or Federal Circuit cases were wrongly decided, this court must continue to follow them.  As the Federal Circuit made clear, "[o]rdinarily, a trial court may not disregard its reviewing court's precedent."  *Strickland v. United States*, 423 F.3d 1335, 1338 n.3 (Fed. Cir. 2005) (citation omitted).  This is true unless the Supreme Court, Federal Circuit, or Congress overrule precedent.  *Id.*  Absent those circumstances, this court can only criticize opinions and recommend their revision.  *Id.*  In the end, this court can only hear cases that satisfy the money-mandating requirement of Supreme Court and Federal Circuit precedent.

## B.    Transfer is not in the interest of justice.

Plaintiff also asserts that transfer to a district court under 20 U.S.C. § 1631 would be futile because there is no federal question jurisdiction in a district court.  ECF No. 8 at 10 n.3, 16-20.  The court, however, is not convinced that Plaintiff is correct about the lack of jurisdiction in a district court.  While that is ultimately a question for a district court, there is not a requirement that every case in federal court be based on a federal question.  *E.g.*, 28 U.S.C. § 1332 (jurisdiction based on diversity of citizenship).  And if Plaintiff is correct that there is jurisdiction under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702-06, *see* ECF No. 8 at 19 (arguing this court can hear claims under the APA), 25-28 (arguing Plaintiff's requested relief is appropriate under the APA), that jurisdiction lies in district court, not this one.  This court's "limited jurisdiction under the Tucker Act does not authorize review of pure challenges to the validity of a regulation . . . .  Instead, such regulations are properly challenged in a district court under the APA."  *Boeing Co. v. United States*, 119 F.4th 17, 24 (Fed. Cir. 2024) (internal citations omitted).  Again, the court is not deciding a district court's jurisdiction—only concluding that any challenge to the validity of the Army's regulations at issue in this case belongs in a district court under the APA (if anywhere).

The Government argues against a transfer on the grounds that a transfer of his case to district court would be futile because Plaintiff fails to state a claim that the delegation of authority to the United States Army Installation Management Command ("IMCOM") Director to set the vaccination requirements was contrary to law.  ECF No. 7 at 10-11; ECF No. 10 at 3-4.  Recall that Plaintiff's action challenges Army regulations requiring children to receive the influenza vaccination prior to participating in youth sports activities at Fort Leonard Wood.  ECF No. 5 ¶¶ 35-38, 40-45.

The Army relied upon IMCOM Regulation 608-10-1 when issuing the vaccination requirement.  *Id.* ¶¶ 37-38, 45.  The Government argues IMCOM Regulation 608-10-1 "is derived from several Department of the Army Headquarters executive orders . . . , Army regulations, and Army directives" and the IMCOM Commanding Officer has the "requisite command authority."  ECF No. 7 at 10.

### 1.    The IMCOM Commanding Officer received a clear delegation of authority from the Secretary of the Army.

To support the IMCOM Commanding Officer's authority, the Government starts with 10 U.S.C. § 7013. ECF No. 7 at 10. That statute provides that the Secretary of the Army "is responsible for, and has the authority necessary to conduct, all affairs of the Department of the Army." 10 U.S.C. § 7013(b). Specifically, the Secretary "may [] assign, detail, and prescribe the duties of members of the Army and civilian personnel of the Department of the Army," and may "prescribe regulations to carry out his functions, powers, and duties under this title." *Id.* § 7013(g)(1). The Secretary's authority is subject to the "authority, direction, and control of the Secretary of Defense." 10 U.S.C. § 7013(b).

The statutory grant of authority to the Secretary of the Army grants a "general authority" that is "a sufficient basis for the Secretary to promulgate" regulations delegating that authority. *McMullen v. United States*, 50 Fed. Cl. 718, 726 (2001) (analyzing 10 U.S.C. § 3013, the predecessor statute to 10 U.S.C. § 7013), *aff'd per curiam*, 71 F. App'x 848 (Fed. Cir. 2003). That general authority to delegate the Secretary's authority is not limited to delegations to Assistance Secretaries of the Army. *McMullen*, 50 Fed. Cl. at 726.

Pursuant to the Secretary's statutory authority, the Secretary gave a "direct delegation of command authority" over Army installations to senior commanders of the installations in Army Regulation 600-20. ECF No. 7-1 at Appx40. That delegated command authority "includes all authorities inherent in command, including the authority to ensure the maintenance of good order and discipline for the installation." *Id.* Thus, the Government contends the IMCOM Commanding Officer had properly delegated authority under the law. ECF No. 7 at 11. The court agrees. The Secretary's general authority over the Army includes the authority to delegate that authority, and the Secretary clearly did delegate that authority in Army Regulation 600-20 to IMCOM Commanding Officers.

2.    IMCOM Regulation 608-10-1 is not contrary to law.

And to support IMCOM Regulation 608-10-1 specifically, the Government points to a variety of "Department of the Army Headquarters regulations, directives, and executive orders." ECF No. 7 at 10. A Department of the Army Headquarters regulation requires vaccinations in accordance with "current guidance from the Centers for Disease Control and Prevention (CDC) and the Advisory Committee on Immunization Practices (ACIP)," and the regulation listed the influenza vaccination as one of those required vaccinations. ECF No. 7-1 at Appx59 (formatting altered); ECF No. 7 at 11. Likewise, an Army directive required "[a]ge-appropriate immunizations . . . for children participating in" youth sports activities in accordance with CDC and ACIP guidance. ECF No. 7-1 at Appx65; ECF No. 7 at 11. Finally, another Army regulation required children participating in youth sports activities to "[h]ave documentation or record of all age appropriate immunizations." ECF No. 7-1 at Appx83; ECF No. 7 at 11. Given the IMCOM Commanding Officer's authority and the other Army regulations and directive requiring the influenza vaccination, the court agrees that Army Regulation 608-10-1 was not promulgated contrary to law.

In the end, this court concludes that it is not in the interest of justice to transfer this case to a district court. To be clear, this order does not preclude Plaintiff from filing any case he chooses in district court, it simply explains why this court is not transferring this case to a district court.

**III.    Conclusion**

For the foregoing reasons, the court **GRANTS** the Government's motion to dismiss, ECF No. 7, **DENIES** Mr. Dreiling's motion for default judgment, ECF No. 9, and **DIRECTS** the Clerk's Office to enter judgment accordingly.

It is so ORDERED.

s/ Edward H. Meyers
Edward H. Meyers
Judge
